# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**24-25**


**GABRIEL LAGRANGE, ET AL.**

**VERSUS**

**HARLEY E. BOONE, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

ON APPLICATION FOR SUPERVISORY WRIT
FROM THE TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 90,887-B
HONORABLE LALA B. SYLVESTER, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**SHANNON J. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Jonathan W. Perry, and Gary J. Ortego, Judges.


**WRIT GRANTED AND MADE PEREMPTORY.**

**C. Kieffer Petree**
**Henshaw & Culbertson, LLP**
**II City Plaza**
**400 Convention Street, Suite 1001**
**Baton Rouge, LA 70802**
**(225) 333-3250**
**COUNSEL FOR DEFENDANT/RELATOR:**
    **Registry Monitoring Insurance Services, Inc.**

**Angela M. Hess**
**400 Poydras Street, Suite 3150**
**New Orleans, LA 70130**
**(504) 904-8060**
**COUNSEL FOR DEFENDANT/RELATOR:**
    **Registry Monitoring Insurance Services, Inc.**

**Jared Dunahoe**
**Dunahoe Law Firm**
**402 Second Street**
**Natchitoches, LA 71457**
**(318) 352-1999**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
    **Gabriel LaGrange**
    **Amanda LaGrange**

**Joseph E. Ritch**
**Samuel "Chuck" Ward**
**Elliott & Ritch, L.L.P.**
**321 Artesian Street**
**Corpus Christi, TX 78401**
**(361) 733-3003**
**COUNSEL FOR PLAINTIFFS/RESPONDENTS:**
    **Gabriel LaGrange**
    **Amanda LaGrange**

**Jack E. Truitt**
**Michelle Mayne Davis**
**Kaylin K. Story**
**Lou Anne Milliman**
**The Truitt Law Firm, LLC**
**1321 Oschner Boulevard, Suite 200**
**Covington, La 70433**
**(985) 327-5266**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
    **KLLM Transport Services, LLC**

**Jennifer Cortes-Johnson**
**Nancy N. Butcher**
**Cortes-Johnson & Butcher, LLC**
**3900 N. Causeway Boulevard, Suite 1200**
**Metairie, LA 70002**
**(504) 910-7243**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **KLLM Transport Services, LLC**

**James M. Dill**
**The Dill Firm**
**825 Lafayette Street**
**Lafayette, LA 70502**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **Roamer Transport, Inc.**

**David A. Strauss**
**Strauss Massey Dinneen, LLC**
**935 Gravier Street, Suite 1450**
**New Orleans, LA 70112**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **Progressive Security Insurance Company**

**Jennifer R. Kretschmann**
**Lewis Brisbois**
**400 Poydras Street, Suite 1300**
**New Orleans, LA 70139**
**COUNSEL FOR DEFENDANT/RESPONDENT:**
     **Great West Casualty Company**

**GREMILLION, JUDGE:**

Registry Monitoring Insurance Services, Inc., (RMIS), Relator, sought supervisory writs from this court asking that we review the trial court's denial of its motion for summary judgment. On April 2, 2024, this court granted RMIS's application pursuant to La.Code Civ.P. art. 966(H) and established a briefing schedule. *LaGrange v. Boone*, 24-25 (La.App. 3 Cir. 4/2/24)(unpublished order). For the reasons that follow, we reverse.

## FACTS AN PROCEDURAL POSTURE

The underlying personal injury action arises from a motor vehicle accident on Louisiana Highway 120 in Natchitoches Parish that occurred on April 27, 2018. Harley E. Boone, a commercial truck driver from Idaho, was driving a Freightliner tractor proceeding north on the Interstate 49 on-ramp across highway 120. Gabriel LaGrange was riding his Honda CBR 1000RR motorcycle traveling west on Highway 120. LaGrange alleges that Boone pulled into his path, causing his motorcycle to collide with the right side of the Freightliner cab.

LaGrange and his spouse, Amanda LaGrange, filed this personal injury action and named a number of defendants: Boone; Roamer Transport, Inc., the company for which Boone drove; KLLM Transport Services, Inc., which hired Roamer to carry the load Boone was hauling; American Honda Motor Co., Inc., the manufacturer of LaGrange's motorcycle; Hub International Transportation Insurance Services, Inc., Roamer's insurer; and Progressive Security Insurance Company, LaGrange's insurer. A second supplemental petition added Great West Casualty Company, in its capacity as the liability insurer of Boone and Roamer, and RMIS. That petition alleged:

3.10 Defendant KLLM TRANSPORT, LLC d/b/a KLLM LOGISTICS SERVICES hired REGISTRY MONITORING INSURANCE SERVICES. INC. (RMIS) to provide safety background checks on its contractors. including. but not limited to Defendant ROAMER TRANSPORT. INC. Defendant RMIS failed to conduct a safety rating check on ROAMER TRANSPORT. INC. knowing that USDOT had not yet conducted its safety audit of ROAMER TRANSPORT. INC. Had the safety audit been conducted, Defendant KLLM would not have hired Roamer as its independent contractor and this crash would not have occurred.

3.11 At all times relevant herein. defendant RMIS was in the business of providing compliance service monitoring to brokers and carriers.

### RMIS'S MOTION FOR SUMMARY JUDGMENT:

On August 7, 2023, RMIS filed its motion for summary judgment. That motion asserted that LaGrange would be unable to carry his burden establishing the negligence and breach of contract claims against RMIS. In support of its motion, RMIS attached the affidavit of Lisa Haubenstock; the contract between itself and KLLM; the "Business and Gate Rules" of KLLM; RMIS's December 10, 2017 report on Roamer; the corporate deposition of KLLM; and LaGrange's second supplemental and amending petition.

*Haubenstock affidavit*

Ms. Haubenstock attested that she is the Senior Vice President of Customer Experience for The Internet Truckstop, LLC, which is a wholly owned subsidiary of The Internet Truckstop Group, LLC, as is RMIS. RMIS is a "third-party aggregator that, upon the direction of its customers, receives and presents certain customer selected, objective data[.]" RMIS collects data from a number of sources and provides that data to customers through a web portal. RMIS is not provided with lists of drivers by freight carriers. RMIS does not perform safety audits or "draw

2

conclusions on any carrier's safety performance." RMIS does not recommend carriers to any customer.

The contract between KLLM and RMIS does not require RMIS to collect driver-specific data for any carrier. RMIS does collect information on the carriers' safety rating, which is obtained from the Federal Motor Carrier Safety Administration (FMCSA). KLLM requires that RMIS collect insurance information on each carrier.

RMIS prepared a report on Roamer dated December 10, 2017. None of the information on Roamer changed between December 10, 2017, and April 27, 2018. As of the date of the report, Roamer's safety rating, as determined by the FMCSA was "none," indicating that the U.S. Department of Transportation had not conducted a safety audit of Roamer. All of the indices maintained by FMCSA on Roamer indicated that Roamer met KLLM's requirements for carriers with which it would contract. RMIS does not perform safety audits of any carriers, nor is it required to under the KLLM contract. Lastly, RMIS does not recommend carriers to KLLM or approve carriers for KLLM.

*Contract*

The contract between RMIS and KLLM provides that RMIS will build a "Carrier Insurance and Data Retrieval Website" for KLLM's use and will monitor "the Carriers' compliance with [KLLM's] specified insurance and other requirements[,]" including providing internet service allowing KLLM to retrieve the data, " including but not limited to certificate of insurance data, carrier data and scanned certificate of insurance images." Regarding the sources and accuracy of the information RMIS aggregates, the contract provides:

3

**Carrier Information.** RMIS obtains insurance, licensing and other information regarding Carriers (collectively, "Carrier Information") from various third party information providers including, without limitation, the DOT, FMCSA, dissemination groups for the DOT and FMCSA, insurance agents and producers (collectively, "Information Providers"). RMIS does not make any express or implied warranty (including without limitation any implied warranty of fitness for a particular purpose) as to and is not responsible for the accuracy or timeliness of Carrier Information except if and solely to the extent any inaccurate or untimely Carrier Information is directly and solely attributable to RMIS's negligence or willful misconduct. Each party's use of Carrier Information shall comply with the respective party's privacy policies and all applicable laws.

Exhibit A to the contract, which was incorporated by reference in the main document, describes the actual services RMIS was to perform:

RMIS will populate and maintain a Carrier Insurance and Data Retrieval Website, consisting of a database of current Carrier insurance data, DOT data, AM Best data, Safer data, and profile data, including Certificate of Insurance images, Electronic W-9, and all such other CLIENT legal documentation pertaining to the program as is specified by CLIENT in writing. Such database will contain Certificate of Insurance information as well as Common, Contract, Broker and Freight Forwarder Authority status, Safety Rating status, Inspection values, underwriter AM Best ratings, and other relevant Carrier data for every Carrier requested by CLIENT, as mutually agreed upon between CLIENT and RMIS in writing and when such information and data are readily available to RMIS from the FMCSA and other Information Providers. RMIS will build an internet Carrier Registration Processing website, based on CLIENT requirements, where Carriers will have the ability to register their RMIS information and have access to required Carrier contracts and legal documentation with the ability to electronically agree or disagree to each document requirement. Carriers will obtain instructions on how their Certificate of Insurance must be received by RMIS. RMIS will design a Carrier status feature where Carriers can check the status of their enrollment via the on-line registration site using the unique I.D. number provided to them at the time of registration. CLIENT will have the same ability to check the status of a Carrier using the same function within the website. RMIS reserves sole discretion on the final web-based product.

RMIS also agreed to provide an internet interface wherein carriers' insurance status information could be viewed.

*The report*

The report on Roamer showed detailed information on contacts within Roamer, areas in which Roamer operated, the number and types of tractors and trailers Roamer had, the number of drivers Roamer employed, the commodities Roamer could transport, and information on Roamer's insurance provider and the applicable limits of insurance it carried. Nothing in the report identified the ten drivers Roamer employed or provided individual safety information about any driver.

*KLLM deposition*

Cassie Icamina was designated as the corporate representative of KLLM for purposes of its corporate deposition pursuant to La.Code Civ.P. art. 1442. Icamina testified that RMIS does not provide any type of report about a carrier's training of its drivers. Roamer had hauled two loads for KLLM before this accident.

**LAGRANGE OPPOSITION:**

LaGrange opposed RMIS's motion with an RMIS report annexed to Icamina's deposition, excerpts from that deposition, the "Roamer Transport Company Snapshot Safecar.gov," a Freedom of Information Act response from the U.S. Department of Transportation regarding Roamer, the contract, and this court's opinion in *LaGrange v. Boone*, 21-560 (La.App. 3 Cir. 4/6/22), 337 So.3d 921, *writ denied*, 22-738 (La. 6/22/22), 339 So.3d 1185.

The Icamina deposition confirmed that, had KLLM known of a carrier's unsatisfactory or conditional safety rating or if a check of the "safer" website disclosed fatal accidents close to or above the national average, KLLM would not have used that carrier.

LaGrange argues that the Department of Transportation response to a Freedom of Information Act (FOIA) request on Roamer disclosed that it had "unsafe

5

driver ratings" worse than half the companies on the roadway before the contract between Roamer and KLLM. These unsafe driver percentiles were "51, 44, 39, 39, and 30."[1]

LaGrange asserted that this court's ruling in *LaGrange*, 337 So.3d 921, precluded a grant of summary judgment in RMIS's favor. LaGrange, lastly, argued that he was a third-party beneficiary of the contract between KLLM and RMIS.

***ACTION OF THE TRIAL COURT*:**

According to the minutes of the trial court, it was concerned whether RMIS was required to obtain the same information obtained by LaGrange through a FOIA request from the U.S. Department of Transportation. LaGrange's counsel argued that the contract did require that of RMIS. The trial court found that a genuine issue of material fact existed as to whether RMIS did "everything that RMIS said they would do was done."

## DISCUSSION AND ANALYSIS

> Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.

> *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765. If reasonable people could only arrive at one conclusion, no genuine issue exists. *Wroten v. Ferriday Auto Ventures, LLC*, 20-387, 20-102 (La.App. 3 Cir. 12/16/20), 310 So.3d 621, *writ denied*, 21-85 (La. 3/9/21), 312 So.3d 585. "A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute." *Id.* at 624.

---

[1] How numbers both below and above the 50th percentile could be worse than more than half of all carriers presents a mathematical paradox to the court.

6

> If the mover will not bear the burden of proof at trial on the issue before the court on the motion for summary judgment, the mover's burden on the motion is:
>
>> to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that mover is not entitled to judgment as a matter of law.
>
> La.Code Civ.P. art. 966(D)(1).

*Bobb v. Sylvester*, 23-109, pp. 3-4 (La. App. 3 Cir. 11/15/23), 374 So.3d 1117, 1119–20.

We will first address LaGrange's contention that he is a third party beneficiary of the RMIS/KLLM contract: quite simply, he is not. "A contract may stipulate a benefit for a third person called a third party beneficiary." La.Civ.Code art. 1978. There is no stipulated benefit for any third party in the agreement, much less LaGrange.

> [T]hree criteria [exist] for determining whether contracting parties have provided a benefit for a third party: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promisee.

*Joseph v. Hosp. Serv. Dist. No. 2 of Par. of St. Mary*, 05-2364, pp. 8—9 (La. 10/15/06), 939 So.2d 1206, 1212. The RMIS/KLLM contract meets none of those criteria.

As noted above, RMIS was hired to aggregate data from a number of sources. It also prepared a database of KLLM's carriers. That database was to include:

> current Carrier insurance data, DOT data, AM Best data, Safer data, and profile data, including Certificate of Insurance images, Electronic W-9, and all such other CLIENT legal documentation pertaining to the program as is specified by CLIENT in writing. Such database will contain Certificate of Insurance information as well as Common, Contract, Broker and Freight Forwarder Authority status, Safety Rating

status, Inspection values, underwriter AM Best ratings, *and other relevant Carrier data for every Carrier requested by CLIENT, as mutually agreed upon between CLIENT and RMIS* in writing *and when such information and data are readily available to RMIS from the FMCSA and other Information Providers.*

(emphasis added). Use of the phrase, "readily available" implies that some information may be difficult to obtain from FMCSA—for instance, requiring a FOIA request for each carrier. Conversely, it also implies that other information may be obtained through reasonable means. The trial court framed the issue as the ready availability of the data showing the various violations for which Roamer was cited.

Focusing on the availability of the data misses the issue. The fact that LaGrange obtained the information via a FOIA request does not raise the inference that obtaining the data was required of RMIS. The issue is whether the contract required the data, and it did not. The contract asserts that other data could be required if mutually agreed upon and reduced to writing. There is no evidence that the information was even requested by KLLM.

Tort liability in Louisiana is determined under the duty/risk analysis:

I.   Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?

II.  Did the defendant owe a duty to the plaintiff?

III. Was the duty breached?

IV.  Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

*Roberts v. Benoit*, 605 So.2d 1032, 1041 (La.1991). Before us is the issue of duty.

The existence of a duty represents a question of law. *Id.* Because the contract was not a third party beneficiary contract, if RMIS owed no duty under the contract to supply this information to KLLM, it certainly owed no duty to the plaintiffs in

this matter.  The contract did not impose this duty on RMIS; thus, the duty was owed neither to KLLM nor the plaintiffs.

Accordingly, we grant the relief sought by Defendant/Relator, Registry Monitoring Insurance Services, Inc., and dismiss the demands of plaintiffs, Gabriel LaGrange and Amanda LaGrange against Registry Monitoring Insurance Services, Inc.  All costs of this matter are assessed to plaintiffs, Gabriel LaGrange and Amanda LaGrange.

**WRIT GRANTED AND MADE PEREMPTORY.**